UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE
2004 SEP 21 P 4: 39
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| HEARTS ON FIRE COMPANY, LLC, <br><br>Plaintiff, <br><br>v. <br><br>MONDERA.COM, INC., and ANNETTE HARTMAN, d/b/a WWW.WEDDING-RING.WS, <br><br>Defendants. | CIVIL ACTION NO. 04-12040 RGS <br><br>Jury Trial Demanded <br><br>MAGISTRATE JUDGE ___ |

RECEIPT # 58849
AMOUNT $150
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 9/22/04

## COMPLAINT

Plaintiff Hearts On Fire Company, LLC ("HOF"), by its undersigned attorneys, sets forth its Complaint against Defendants Mondera.com, Inc. ("Mondera") and Annette Hartman, d/b/a/ www.wedding-ring.ws, ("Hartman") as follows:

## PARTIES

1. HOF is a Massachusetts Limited Liability Company with a principal place of business at 99 Summer Street, Boston, Massachusetts 02210. HOF manufactures and distributes gemstones (specifically, cut diamonds) and jewelry to authorized retailers and provides services relating to the sale of jewelry to retailers and the public.

2. On information and belief, Mondera is a Delaware corporation with a principal place of business at 45 West 45th Street, 15th Floor, New York, NY 10036. On information and belief, Mondera sells jewelry, including diamond jewelry, over the Internet.

3. On information and belief, Annette Hartman is an individual residing at 10216 West Evans Creek Road, Rogue River, Oregon 97537. Additionally, upon information and belief, Hartman operates a web site available at www.wedding-ring.ws, where she provides

advertising links on the Internet to Mondera's web site that offers jewelry for sale.

## JURISDICTION AND VENUE

4.  Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a), which confer original jurisdiction upon this Court for civil actions arising under the laws of the United States and any act of Congress relating to trademarks, respectively. In addition, supplemental jurisdiction over related state law claims is conferred upon this Court by 28 U.S.C. § 1367(a).

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Mondera and Hartman "reside" in this judicial district within the meaning of 28 U.S.C. § 1391(c) insofar as Mondera and Hartman are subject to personal jurisdiction in this district. Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of this action is situated, within this district.

6.  This court has personal jurisdiction over Mondera and Hartman pursuant to Mass. Gen. Laws ch. 223A, §§ 3(a), (b), (c), and (d) because this action arises: (a) from Mondera's and Hartman's transaction of business in Massachusetts; (b) from Mondera's conduct with respect to contracting to supply things in Massachusetts, among other places; (c) from Mondera and Hartman causing tortious injury in Massachusetts by acts or omissions within Massachusetts; and/or (d) from Mondera and Hartman causing tortious injury in Massachusetts by acts or omissions outside of Massachusetts while regularly doing or soliciting business, or engaging in a persistent course of conduct, or deriving substantial revenue from goods used or consumed in Massachusetts.

7.  The particular conduct triggering such jurisdiction includes, among other things:

(a) Mondera's operation of a highly interactive web site through which Mondera solicits and conducts business,

(b) Hartman's operation of an interactive web site that is extensively linked with, and designed with the purpose of encouraging users to link to, Mondera's web site for the express purpose of soliciting business to be conducted through Mondera's web site,

(c) Mondera's and Hartman's intentional use of HOF's trademark on the Internet to promote Mondera's sale of competing goods through Mondera's highly interactive web site, and

(d) Hartman's publishing of HOF's trademark on a web site in the form of advertising links to Mondera's highly interactive web site in which Mondera conducts business and sells competing goods.

8.  By intentionally using HOF's trademark, Mondera's and Hartman's conduct is intended to cause harm to HOF, a company which is located in the Commonwealth of Massachusetts.

9.  Through such conduct, Mondera and Hartman have purposefully availed themselves of the privileges of conducting business in the Commonwealth of Massachusetts, and it is reasonably foreseeable that Mondera and Hartman would be subjected to this Court's jurisdiction.

## FACTUAL BACKGROUND

10. HOF was originally founded in 1978 as Di-Star, Ltd. HOF adopted its present name in 1996, when it commenced using the Hearts On Fire® mark in connection with the sale and advertising of diamonds and jewelry.

3

11. HOF is a leader in the distribution of branded diamonds – i.e., diamonds that are identified by source-designating trademarks, which are extensively promoted.

12. HOF's diamonds are known for their consistent high quality cut, as well as for their color and clarity.

13. HOF sells to authorized retailers at numerous retail locations throughout the United States.

14. HOF also promotes its diamonds and jewelry through a web site located at www.heartsonfire.com.

15. Since 1996, HOF has used the Hearts On Fire® mark in connection with the sale, distribution, and advertising of all of its diamonds and jewelry.

16. The Hearts On Fire® mark is registered with the United States Patent and Trademark Office ("USPTO") for "gemstones, namely, cut diamonds" in Class 14 with a first use in commerce in November of 1996. Attached as Exhibit A is a true and accurate copy of Registration No. 2,119,886 issued by the USPTO for such registration. The Hearts On Fire® mark is also registered with the USPTO for "jewelry" in Class 14 with a first use in commerce in 1997. Attached as Exhibit B is a true and accurate copy of Registration No. 2,686,511 issued by the USPTO for such registration.

17. Through extensive and continuous sales, promotion, and use, the Hearts On Fire® mark has come to be associated with HOF and to identify HOF as the source of the goods and services offered in connection with these marks.

18. On information and belief, Mondera is a retailer of jewelry containing diamonds.

19. On information and belief, Mondera sells its jewelry containing diamonds to consumers and promotes its products by means of a web site accessible through the universal

resource locater www.Mondera.com. Attached herein as Exhibit C is a true and accurate copy of such web page.

20. On information and belief, Hartman operates a web site accessible through the universal resource locater www.wedding-ring.ws. Attached herein as Exhibit D is a true and accurate copy of such web page.

21. The web site www.wedding-ring.ws provides consumers with suggested links for what appears to be a variety of Internet sites selling jewelry. However, in reality, all or substantially all links on the site direct consumers to Mondera's web page at www.Mondera.com.

22. Upon information and belief, Mondera operates an affiliate partner program, which provides commissions to Mondera's "partners" on sales of Mondera products in exchange for links and advertising on the affiliate's web site. Upon information and belief, Hartman is an affiliate partner of Mondera.

23. In or about July 2004, HOF learned that the web site located at www.wedding-ring.ws was making use of HOF's mark, Hearts On Fire®.

24. When a consumer goes to the web site located at www.wedding-ring.ws, there are several Internet links to chose from that appear to designate various jewelry products. Upon selection of the link captioned "diamonds," the consumer is directed to a web page with several links that appear to designate different types of diamonds available for sale, including a link captioned "hearts on fire diamonds." The captions for each of these links, including the "hearts on fire diamonds" caption, are repeated at the bottom of this web page. Attached herein as Exhibit E is a true and accurate copy of such web page.

25. Upon selection of the link captioned "hearts on fire diamonds," the consumer is

then directed to a web page containing a large caption spread across the entire web page in large, bold, and black letters stating "hearts on fire diamonds." Directly below that writing is an even larger link enticing users to click by stating "ENTER HERE." Attached herein as Exhibit F is a true and accurate copy of such web page.

26. Upon selection of the link "ENTER HERE," the consumer is directed to Mondera's home web page at www.Mondera.com, where consumers may purchase Mondera jewelry, including diamonds described as "hearts and arrows diamonds."

27. In fact, Mondera and Hartman do not sell and have not sold genuine Hearts On Fire® diamonds.

28. On or about July 22, 2004, HOF's in-house counsel sent a letter to Mondera notifying Mondera of its violations of HOF's trademark rights and warning Mondera to cease its illegal conduct. A true and accurate copy of the July 22 letter is attached as Exhibit G.

29. In response to the July 22 letter, Ena Ortiz, holding herself out as Mondera's Controller, contacted HOF's counsel by telephone to apologize for the use of the Hearts On Fire® trademark and stated that the infringing information on www.wedding-ring.ws would be taken down.

30. Despite the representations of Mondera's Controller that the infringing material on www.wedding-ring.ws would be taken down, no changes were made, and the infringing material remained. Accordingly, on August 18, 2004 outside counsel for HOF wrote to Mondera once again to demand that Mondera provide written assurances that Mondera will immediately cease and desist from any and all use of the Hearts On Fire® trademark or other marks and/or phrases that are confusingly similar to any trademarks owned by HOF, and that Mondera would effect the immediate removal of the Hearts On Fire® trademark from the web site located at

www.wedding-ring.ws. A true and accurate copy of the August 18 letter is attached herein as Exhibit H. Mondera did not respond to this letter.

31. As of this date, the infringing material remains on the Internet, and therefore Mondera and Hartman continue to make unauthorized and intentional use of HOF's trademark in an attempt to divert and confuse consumers for Mondera's and Hartman's benefit.

**COUNT I**
**Trademark Infringement**
**(15 U.S.C. § 1114(1))**

32. HOF specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

33. HOF engages in interstate activities designed to promote the goods and services sold, as well as the good will associated with its trademarks, throughout the United States.

34. The mark Hearts On Fire® is inherently distinctive and/or has acquired secondary meaning.

35. The mark Hearts On Fire®, relating to HOF's diamond and jewelry business, has been, and will continue to be, known throughout the United States as identifying and distinguishing HOF's business.

36. Without authorization or the consent of HOF, Mondera and Hartman have used, and continue to use, the Hearts On Fire® mark. Further, Mondera and Hartman sell, offer for sale, distribute, and/or advertise goods and services to the general public in competition with HOF's sales, distribution, and advertisement of genuine Hearts On Fire® diamonds and jewelry, in or affecting interstate commerce and provides information about diamonds in or affecting interstate commerce.

37. Mondera's and Hartman's use of the mark Hearts On Fire® for competing goods and services is likely to cause, and is causing, confusion, mistake, and deception among the

general public as to the origin of the goods and services, or as to whether Mondera or Hartman is sponsored by, affiliated with, or otherwise connected with HOF in violation of 28 U.S.C. § 1114(1).

38. By using the Hearts On Fire® mark, and by selling, offering for sale, distributing, and/or advertising goods and services to the general public in connection with such marks and/or confusingly similar variants thereof, for profit and without HOF's authorization, Mondera and Hartman are depriving HOF of its exclusive right to control, and benefit from, its trademark. If permitted to continue, Mondera's and Hartman's actions will nullify HOF's right to the exclusive use of its trademark, free from infringement, and will have a substantial and adverse effect on HOF's existing and projected future interstate business of marketing products and services identified by its trademark.

39. By paying or otherwise encouraging or permitting Hartman to provide links to Mondera's web site using the Hearts On Fire® mark and by offering competing goods for sale to consumers who click on such links, Mondera is wrongfully using HOF's mark, intentionally inducing Hartman to infringe HOF's rights in its mark, and/or contributing to such infringement by providing substantial assistance to the infringement of HOF's rights, with knowledge and/or reason to know of the infringement of HOF's rights in the mark Hearts On Fire®.

40. HOF has been, and continues to be, damaged by Mondera's and Hartman's activities and conduct. Mondera and Hartman have profited thereby and, unless their conduct is enjoined, HOF's good will and reputation will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, HOF is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

41. By using the Hearts On Fire® mark, and by selling, offering for sale, distributing,

and/or advertising goods and services to the general public in connection with such mark, Mondera and Hartman have intentionally and knowingly used HOF's trademark. Accordingly, HOF is entitled to a judgment of three times its damages and Defendants' ill-gotten profits, together with reasonable attorney's fees, pursuant to 15 U.S.C. § 1117(a).

42. Mondera and Hartman have willfully used a counterfeit of HOF's mark in connection with the sale, offering for sale, or distribution of goods or services, as defined in 15 U.S.C. § 1116(d)(1)(B). As previously alleged, the mark Hearts On Fire® is a mark that is in use and that HOF registered on the principal register in the United States Patent and Trademark Office for "gemstones, namely cut diamonds" and for "jewelry" sold, offered for sale, or distributed. HOF is therefore entitled to an award of statutory damages in the amount of not less than $500 or more than $100,000, or for willful violations, up to $1 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c).

## COUNT II
### Unfair Competition and False Designation of Origin
### (15 U.S.C. § 1125(a))

43. HOF specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

44. HOF engages in interstate activities designed to promote the goods and services sold, as well as the good will associated with its trademarks, throughout the United States.

45. The mark Hearts On Fire® is inherently distinctive and/or has acquired secondary meaning.

46. The mark Hearts On Fire® relating to HOF's diamond and jewelry business, has been, and will continue to be, known throughout the United States as identifying and distinguishing HOF's business.

47. By using, and contributing to the use of HOF's mark in connection with the sale, offering for sale, distribution, and/or advertising of goods and services to the general public, without HOF's authorization or consent, Mondera and Hartman are falsely designating the origin of their goods or services and/or is falsely representing sponsorship by, affiliation with, or connection to, HOF and its goods and/or services in violation of 15 U.S.C. § 1125(a)(1).

48. HOF has been, and continues to be, damaged by Mondera's and Hartman's activities and conduct. Mondera and Hartman have profited therefrom and, unless their conduct is enjoined, HOF's good will and reputation will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, HOF seeks injunctive relief pursuant to 15 U.S.C. § 1116.

49. Mondera and Hartman have intentionally and knowingly used, induced the use of, and/or contributed to the use of HOF's mark in connection with selling, offering for sale, distributing, and/or advertising goods and services to the general public. Accordingly, HOF is entitled to a judgment of three times its damages and Mondera's and Hartman's ill-gotten profits, together with reasonable attorney's fees, pursuant to 15 U.S.C. § 1117(a).

50. Mondera and Hartman are selling, offering for sale, distributing, and/or advertising goods and/or services to the general public using a designation confusingly similar to HOF's mark. Accordingly, HOF also seeks destruction of all infringing articles that contain such designation pursuant to 15 U.S.C. § 1118.

## COUNT III
### Trademark Dilution
### (15 U.S.C. § 1125(c))

51. HOF specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

52. HOF engages in interstate activities designed to promote its goods and services,

as well as the good will associated with its trademarks, throughout the United States.

53. As set forth herein, HOF's trademark is distinctive, within the meaning of 15 U.S.C. § 1125(c)(1).

54. Through extensive use, sales, advertising, promotion, and continuity, HOF's trademark has become famous, within the meaning of 15 U.S.C. § 1125(c)(1).

55. Mondera's and Hartman's use, and contribution to the use, of HOF's trademark is dilutive of the distinctive value of HOF's marks within the meaning of 15 U.S.C. § 1125(c)(1).

56. Mondera's and Hartman's diluting actions entitle HOF to an injunction pursuant to 15 U.S.C. § 1125(c)(1).

57. By its bad faith diluting actions, Mondera and Hartman are liable for profits, actual damages, and the costs of the action, pursuant to 17 U.S.C. § 1117(a).

58. Because its bad faith conduct is exceptional, the court may award attorneys' fees to HOF, pursuant to 15 U.S.C. § 1117(a).

## COUNT IV
## Unfair Competition
## (Common Law)

59. HOF specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

60. HOF has a distinctive mark that is valid at common law, and that it uses in connection with the sale, distribution, and advertising of its diamonds and jewelry.

61. The mark Hearts On Fire®, relating to HOF's diamond and jewelry business, has been, and will continue to be, known throughout the United States as identifying and distinguishing HOF's business.

62. The mark Hearts On Fire® is inherently distinctive and/or has acquired secondary

meaning.

63. Without authorization or consent of HOF, Mondera and Hartman have and continue to use, and contribute to the use of HOF's mark in connection with the sale, offering for sale, distribution, and advertising of goods and/or services to the general public in competition with HOF.

64. Mondera's and Hartman's use of HOF's mark in connection with the sale, offering for sale, distribution, and/or advertising of goods and/or services is likely to cause confusion, mistake, and deception among the general public as to the origin of Mondera's and Hartman's goods and services and/or as to sponsorship by, affiliation with, and/or connection to HOF.

65. Mondera and Hartman have willfully, intentionally, and knowingly used HOF's mark in connection with the sale, offering for sale, distribution, and/or advertising of goods and/or services.

66. By using HOF's mark in connection with the sale, offering for sale, distribution, and/or advertising of goods and/or services to the general public, Mondera and Hartman have wrongfully profited from its infringement of such mark. HOF has been, and continues to be, damaged by Mondera's and Hartman's conduct which has a substantial and adverse effect on HOF's good will and business identified by its trademark. Furthermore, Mondera's and Hartman's actions will have the effect of nullifying HOF's right to the exclusive use of its mark, free from infringement. HOF, therefore, seeks actual damages as well as disgorgement of Mondera's and Hartman's profits from the use of such mark.

67. Mondera and Hartman have profited thereby and, unless their conduct is enjoined, HOF's good will and reputation will continue to suffer irreparable injury that cannot adequately

be calculated or compensated by money damages. Accordingly, HOF also seeks injunctive relief to restrain Mondera's and Hartman's use of marks confusingly similar to the mark of HOF.

## COUNT V
## Unfair and Deceptive Acts and Practices
## (Mass. Gen. Laws ch. 93A, § 2)

68. HOF specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

69. HOF, Mondera and Hartman are in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A.

70. The foregoing conduct by Mondera and Hartman constitutes unfair or deceptive acts and practices within the meaning of Mass. Gen. Laws ch. 93A.

71. Mondera's and Hartman's unfair and deceptive business practices in the conduct of commercial business occur primarily and substantially in Massachusetts.

72. Through the unfair and deceptive acts and practices described herein, HOF has been, and continues to be, damaged by Mondera's and Hartman's activities and conduct. Mondera and Hartman have profited thereby and, unless their conduct is enjoined, HOF will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, HOF seeks injunctive relief pursuant to Mass. Gen. Laws ch. 93A, § 11.

73. By using HOF's trademark and/or confusingly similar designations in connection with the sale, offering for sale, and/or advertising of goods and/or services to the general public, Mondera and Hartman have intentionally and knowingly used HOF's trademark. Accordingly, HOF is entitled to a judgment of three times its damages, together with reasonable attorney's fees, pursuant to Mass. Gen. Laws ch. 93A, § 11.

13

**WHEREFORE**, HOF respectfully requests that this Court:

1. Issue a preliminary injunction and permanent injunction preventing Mondera and Hartman from using or contributing to the use of HOF's mark and any confusingly similar designations, and requiring Mondera and Hartman to discontinue their current infringing practices;

2. Enter judgment in favor of HOF on the counts asserted herein and award damages in an amount to be determined at trial, including damages in the amount of Mondera's and Hartman's profits from the willful infringement of HOF's mark, doubled or trebled where appropriate;

3. Enter judgment in favor of HOF on the counts asserted herein and award statutory damages in the amount of not less than $500 or more than $100,000, or, for willful violations, up to $1 million, per counterfeit mark per type of goods or services sold, offered for sale, or distributed.

4. Award HOF the costs incurred in bringing this action, including attorneys' fees;

5. Order Mondera and Hartman to certify the destruction of all materials, and the removal of references on their web sites that refer to confusingly similar designations to the mark Hearts On Fire®; and

6. Award HOF such further relief as it deems just, proper and equitable.

## JURY DEMAND

HOF demands a trial by jury on all issues so triable.

                    HEARTS ON FIRE COMPANY, LLC

                    By its attorneys,

                    */s/ Stephen M. LaRose*
                    Robert P. Sherman, Esq. (BBO #548540)
                    Mark D. Robins, Esq. (BBO #559933)
                    Stephen M. LaRose, Esq. (BBO #654507)
                    NIXON PEABODY LLP
                    100 Summer Street
                    Boston, MA  02110

September 21, 2004        (617) 345-1000